Marcus A. Asner
marcus.asner@arnoldporter.com
Alice C.C. Huling
alice.huling@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, New York 10019
(212) 836-8000

Drew A. Harker (*pro hac vice* forthcoming)
drew.harker@arnoldporter.com
Anne W. Pearlman (*pro hac vice* forthcoming)
anne.pearlman@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, D.C. 20001
(202) 942-5000

(Additional Counsel Listed Below)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------ x

|  |  |
|---|---|
| PLANNED PARENTHOOD OF NEW YORK CITY, INC., | Civil Action No. 18-cv-5680 |
| Plaintiff, | **COMPLAINT** |
| - against - | |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, ALEX MICHAEL AZAR II in his official capacity as Secretary of the U.S. Department of Health and Human Services, and VALERIE HUBER in her official capacity as Senior Policy Advisor for the Office of the Assistant Secretary for Health at the U.S. Department of Health and Human Services , | |
| Defendants. | |

------------------------------------------------------------ x

Plaintiff Planned Parenthood of New York City, Inc. ("PPNYC"), by and through its undersigned attorneys, complains of defendants U.S. Department of Health and Human Services ("HHS" or "the agency"), Alex Michael Azar II ("Azar"), and Valerie Huber (collectively "Defendants"), and alleges as follows:

## NATURE OF THE ACTION

1.      Plaintiff PPNYC is a prior recipient of federal grant funding under the eight-year congressionally appropriated Teen Pregnancy Prevention Program (the "TPP Program").  HHS has issued new TPP Program Funding Opportunity Announcements ("FOAs") changing the long-standing requirements for TPP Program grants.  In doing so, HHS unlawfully is seeking to repurpose the current evidence-based TPP Program from an effective program into an ineffective abstinence-only-until-marriage program, in violation of Congress's requirements.  Plaintiff brings this action to enjoin the agency's politically motivated and unlawful decision to alter the TPP Program.

2.      Created by a congressional appropriations statute for Fiscal Year ("FY") 2010, the TPP Program provides federal grants for evidence-based teen pregnancy prevention programs, targeting communities with high rates of teen pregnancy and focusing on youth who are often underserved, including youth of color, youth in foster care, and youth in rural communities.

3.      As of September 2016, the TPP Program was on track to serve an estimated 1.7 million youths across the United States.[1]

4.      Since the TPP Program's inception in 2010, the teen birth rate has declined 41% from 2010 to 2016—a drop that is more than twice as large as the decline in any other six-year period.[2]

---

[1] Evelyn Kappeler, *Building the Evidence to Prevent Adolescent Pregnancy*, 106 AM. J. PUB. HEALTH S1, S5 (2016).

[2] Valerie Strauss, *Trump Administration Cuts Funding for Teen Pregnancy Prevention Programs. Here Are the Serious Consequences*, WASH. POST (Sept. 7, 2017), https://www.washingtonpost.com/news/answer-sheet/wp/2017/09/07/trump-administration-cuts-

(footnote continued)

5.      On January 5, 2018, the Centers for Disease Control and Prevention ("CDC") released results of its research on sexual intercourse among high school students from 2005–2015, finding significant decreases in the proportion of high school students nationwide who had ever had sexual intercourse.[3]  The CDC noted that "innovations in and federal resources for . . . teen pregnancy prevention" is one of the influences that may have contributed to the decline.[4]

6.      HHS has also stated that the TPP Program has "significantly contributed" to the research on effective programs to prevent teen pregnancy.[5]

7.      Despite the program's success, HHS—since the beginning of the Trump-Pence administration—has taken numerous steps in an unlawful campaign to try to eliminate it.  As a part of this effort, HHS attempted to terminate current grantees' awards two years early—an action multiple courts have declared unlawful.  Undeterred, HHS has issued the new Funding Opportunity Announcements purporting to continue the TPP Program, but in fact undermining it and remaking it into a narrow, ideologically-driven abstinence-only program, despite Congress's directive to the contrary.

8.      Consequently, as a result of HHS's restructuring of the TPP Program via the 2018 Tier 1 FOA[6] and the 2018 Tier 2 FOA[7] (collectively, the "2018 FOAs"), hundreds of thousands

---

funding-for-teen-pregnancy-prevention-programs-here-are-the-serious-consequences/?utm_term=.46e240f75cdb.

[3]  In addition to overall decreases seen during this period, decreases were also seen among 9th and 10th grade students, among African American students across all grades, and among Hispanic students in three grades.  Kathleen A. Ethier, Laura Kann & Timony McManus, Ctrs. for Disease Control & Prevention, *Sexual Intercourse Among High School Students—29 States and United States Overall, 2005–2015*, 66 Morbidity & Mortality Weekly Report 1393, 1395 (Jan. 5, 2018), https://www.cdc.gov/mmwr/volumes/66/wr/pdfs/mm665152a1-H.pdf.

[4] *Id.* at 1396.

[5]  HHS, Office of Adolescent Health, *About the Teen Pregnancy Prevention (TPP) Program*, https://www.hhs.gov/ash/oah/grant-programs/teen-pregnancy-prevention-program-tpp/about/index.html.

[6]  HHS, *Phase I Replicating Programs (Tier 1) Effective in the Promotion of Healthy Adolescence and the Reduction of Teenage Pregnancy and Associated Risk Behaviors* 16, 27-28 (Apr. 20, 2018), available at

(footnote continued)

of young people nationwide will be deprived of the high-quality and complete information and education that have demonstrated effectiveness in helping young people make healthy decisions about their health and their futures.

9.     Plaintiff brings this action and seeks preliminary and permanent injunctive relief to prevent irreparable harms caused by Defendants' unlawful restructuring of the TPP Program via the 2018 FOAs.[8]

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

11.     Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(e) because Plaintiff is headquartered in this district and a substantial part of the events giving rise to the claims occurred and continues to occur in this district.

## PARTIES

12.     **Plaintiff PPNYC** is a not-for-profit corporation organized under the laws of New York.  PPNYC provides high-quality, affordable sexual and reproductive health care through five health centers in New York City.  PPNYC's mission is to "empower individuals to make independent, informed decisions about their sexual and reproductive lives," and PPNYC "provide[s] information and health care, and promote[s] public policies that make those services available to all."  Accordingly, PPNYC believes that "adolescents and adults have the right to access the information they need to make well-informed sexual and reproductive health decisions

---

https://www.grantsolutions.gov/gs/preaward/previewPublicAnnouncement.do?id=61741   ("2018 Tier 1 FOA").

[7] HHS, *Phase I New and Innovative Strategies (Tier 2) to Prevent Teenage Pregnancy and Promote Healthy Adolescence* 25 (Apr. 20, 2018), available at https://www.grantsolutions.gov/gs/preaward/previewPublicAnnouncement.do?id=61742   ("2018 Tier 2 FOA").

[8] An additional case related to the 2018 Tier 1 FOA has been filed in Oregon (*Multnomah County v. Azar*, No. 3:18-cv-01015-HZ (D. Or. June 8, 2018)), as well as a case related to both of the 2018 FOAs in Washington (*Planned Parenthood of Greater Wash. And N. Idaho*, No. 2:18-cv-00207 (E.D. Wash. June 21, 2018)).

in a safe, supportive, and confidential environment" and "in providing the best sexual and reproductive health care and education possible, grounded in evidence-based practice, enhanced by innovation, and informed by respect for every person's unique needs and circumstances."

13.     **Defendant HHS** is a Department of the Executive Branch of the U.S. Government and is an agency within the meaning of 5 U.S.C. § 551(1).  HHS is the federal agency responsible for awarding and administrating funds under the TPP Program.

14.     **Defendant Alex Azar** is Secretary of HHS and is sued in his official capacity.

15.     **Defendant Valerie Huber** is the Senior Policy Advisor for the Office of the Assistant Secretary for Health at HHS. She is sued in her official capacity.

## FACTUAL ALLEGATIONS
### Teenage Pregnancy in the United States

16.     Teenage pregnancy long has been a public health concern in the United States, even while on the decline in recent years.  According to the CDC, in 2015, "a total of 229,715 babies were born to women aged 15–19 years, for a birth rate of 22.3 per 1,000 women in this age group."[9]  This figure is an overall decrease of 8% when compared to 2014.[10]

17.     Despite these declines, teenage pregnancy and childbirth continue to generate substantial socioeconomic costs.  The CDC estimates that, in 2010, teenage pregnancy and childbirth "accounted for at least $9.4 billion in costs to U.S. taxpayers for increased health care and foster care, increased incarceration rates among children of teen parents, and lost tax revenue because of lower educational attainment and income among teen mothers."[11]  Pregnant teenagers are significantly less likely to graduate from high school, with only approximately 50% of teenage mothers receiving a high school diploma by age 22.[12]  Comparatively, approximately

---

[9]     *See* CDC, *About Teen Pregnancy: Teen Pregnancy in the United States*, https://www.cdc.gov/teenpregnancy/about/index.htm.
[10]    *Id.*
[11]    *Id.*
[12]    *Id.*

90% of women who do not give birth as teenagers graduate from high school.[13]  Teenagers who give birth are also more likely to be poor as adults and rely on public assistance compared with teenagers who delay childbirth until adulthood.[14]

18.     As a result, public health officials, including the CDC, agree that reducing teenage pregnancy is in the best interest of not only teenagers and their children, but society as a whole.  According to the CDC, "teen pregnancy prevention is one of CDC's top seven priorities, a 'winnable battle' in public health, and of paramount importance to health and quality of life for our youth."[15]

### The Shift in Federal Support for Evidence-Based Programs to Reduce Teenage Pregnancy

19.     In 2006 and 2007, teen pregnancy rates began to climb after years of decline. In response, Congress mandated the creation of the TPP Program in 2009 to fund a wide array of evidence-based, scientifically rigorous approaches to combating teen pregnancy.[16]

20.     This was a deliberate shift from the previous two decades, during which Congress directed that the principal criteria for federal funding of sex education programs was that programs teach that abstinence from all sexual activity outside of marriage is "the expected standard for all school age children" and that any "sexual activity outside of the context of marriage is likely to have harmful psychological and physical effects."[17]  For years, Congress made such abstinence-only programs the main recipient of federal sex education funding without requiring evidence that funded programs were effective in reducing teen pregnancy, delaying sexual intercourse, or preventing other sexually risky behaviors.[18]

---

[13] *Id.*

[14] Leslie Kantor, et al. *Abstinence-Only Policies and Programs: An Overview,* 5 SEXUALITY RESEARCH AND SOCIAL POLICY 3 (2008).

[15] CDC, *supra* note 9.

[16] Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2009).

[17] 42 U.S.C. § 710 (2017).

[18] Sexuality Info. & Educ. Council of the U.S., *A Brief History of Federal Funding for Sex*

(footnote continued)

21.     Generally, abstinence-only education programs teach that abstinence from sexual activity is the only certain way to avoid out-of-wedlock pregnancy, sexually transmitted diseases, and other associated health problems, and minimize or eliminate education involving non-abstaining sexual behaviors.   Over the past several decades, many abstinence-only education programs have been proven not to be effective at delaying sexual intercourse and preventing unintended pregnancies and the spread of STDs for adolescents.[19]   Abstaining from sex until marriage ignores the reality that most persons have had sex by 18 years,[20] and according to the Census Bureau, in 2017, the median age at first marriage for men was 29.5 year and 27.4 years for women.[21]   Abstinence-only education can also contain false and misleading information, as well as scientific errors.[22]

22.     As of FY 2009, the federal government funded abstinence-only programs through three main funding sources, all administered by HHS's Administration on Children, Youth, and Families ("ACF").   The first two programs, the Community-Based Abstinence Education ("CBAE") program and a portion of the Adolescent Family Life Act ("AFLA") program, provided grants to organizations offering abstinence-only education programs.   The third program, the Title V State Abstinence Education Block Grant Program ("Title V"), provided grants to states.

--------------------------------

*Education and Related Programs*, http://www.siecus.org/index.cfm?fuseaction=page.viewPage&pageID=1341&nodeID=1.

[19] *See, e.g.*, Santelli et al., *Abstinence-Only-Until-Marriage Policies and Programs: An Updated Position Paper of the Society for Adolescent Health and Medicine*, 61 J. ADOLESCENT HEALTH 40001 (2017), https://www.jahonline.org/article/S1054-139X(17)30297-5/fulltext.

[20] The CDC reports that the mean age of first intercourse for women is 17.3 years and 17.0 years for men. CDC, *Key Statistics from the National Survey of Family Growth - S Listing*, https://www.cdc.gov/nchs/nsfg/key_statistics/s.htm

[21] Census Bureau, *Historical Material Tables*, https://www.census.gov/data/tables/time-series/demo/families/marital.html at Table MS-2.

[22] *The Content of Federally Funded Abstinence-Only Education Program* (U.S. House of Representatives Committee on Government Reform, December 1, 2004).

23.     The Government Accountability Office found that ACF provided very little oversight of the abstinence-only programs under its administration, and did not review its grantees' materials for scientific accuracy or even require grantees to review their own materials for scientific accuracy.[23]

24.     After years (and over one billion dollars) of federal investments in abstinence-only education, in 2009, Congress redirected two-thirds of federal funds from abstinence-only education to evidence-based teen pregnancy prevention programs, creating the TPP Program and the Personal Responsibility Education Program ("PREP"), and allowing funding to expire for one of the abstinence-only education programs, AFLA.   PREP, like the TPP Program, was created to implement evidence-based approaches to preventing teenage pregnancy, STDs, and related topics.

25.     Congress established the TPP Program "to create evidence-based social policy initiatives to improve policymaking and program outcomes" by "designing new initiatives to build rigorous data, rather than treating evaluation as an afterthought, and using the evidence that emerges for action."[24]   This Congressionally mandated approach was in stark contrast to the ideologically-driven abstinence-only education programs that were in place at the time.

26.     Consistent with those objectives, when Congress initially appropriated $110 million in funds to the TPP Program in FY 2010, it directed that such funds "shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age

---

[23] Abstinence Education: Efforts to assess the accuracy and effectiveness of federally funded programs. Washington, D.C.: Government Accountability Office; 2006. Available at: http://www.gao.gov/new.items/d0787.pdf. (last accessed June 14, 2018).
[24] Evelyn M. Kappeler & Amy Feldman Farb, *Historical Context for the Creation of the Office of Adolescent Health and the Teen Pregnancy Prevention Program*, 54 J. ADOLESCENT HEALTH S3, S3 (2014).

appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants."[25]

27.     Of the $110 million originally appropriated, Congress directed that not less than $75 million shall be for "replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors."[26] These "replication" grants are referred to as "Tier 1."

28.     Congress also directed that not less than $25 million of the appropriated funds shall be "available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy."[27] These "evaluation" grants are referred to as Tier 2.[28]

29.     Congress further directed the creation of the Office of Adolescent Health ("OAH"), which is responsible for implementing and administering the TPP Program.[29]

30.     Congress also appropriated $4,455,000[30] for teen pregnancy program evaluations, which helped to pay for—and continues to help to pay for—HHS's Teen Pregnancy Prevention Evidence Review.[31]

31.     In subsequent years, Congress has continuously funded the TPP Program at approximately the same levels in the same manner and with the same language.

---

[25] Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. 3034, 3253 (2009).

[26] *Id.*

[27] *Id.*

[28] *See* Carmen Solomon-Fears, Cong. Research Serv., *Teenage Pregnancy Prevention: Statistics and Programs* 12 (2016), https://fas.org/sgp/crs/misc/RS20301.pdf; *see also* Consolidated Appropriations Act, 2017, Pub. L. 115-31, 131 Stat. 135 (2016).

[29] OAH et al., *Teen Pregnancy Prevention Program (TPP)*, https://www.hhs.gov/ash/oah/grant-programs/teen-pregnancy-prevention-program-tpp/index.html.

[30] Consolidated Appropriations Act, 2010, 123 Stat. at 3253.

[31] This independent review was sponsored through HHS's Office of the Assistant Secretary for Planning and Evaluation (ASPE), the Office of Adolescent Health (OAH) within the Office of the Assistant Secretary for Health, and the Family and Youth Services Bureau (FYSB) within the Administration for Children and Families (ACF).

32.     Congress, to this day, has maintained separate funding streams for evidence-based programs—such as the TPP Program and PREP—and abstinence-only education programs—such as Title V and the Sexual Risk Avoidance Education Program ("SRAE Program").

### HHS Administers the TPP Program from 2010 to 2016 Consistent with Congressional Directives and Objectives

33.     As directed by Congress, HHS contracted with Mathematica Policy Research ("Mathematica") in 2010 to undertake an independent, systematic review of the existing research literature on teen pregnancy prevention initiatives to identify programs that had documented positive impacts on teen pregnancy prevention, sexual transmitted infections ("STIs"), and other associated sexual risk behaviors.  This "Evidence Review" identifies program models that have been "proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors" as Congress directed for Tier 1 grants.[32]  To meet the criteria for inclusion on HHS's list, the program must have evidence of at least one favorable, statistically significant impact on at least one sexual risk behavior or reproductive health outcome of interest (sexual activity, number of sexual partners, contraceptive use, STIs, or pregnancy).[33]

34.     After analyzing the applicable literature in 2010, Mathematica identified 28 evidence-based programs spanning a variety of approaches—including sexual education programs that discuss abstinence within a comprehensive framework of sexual health—each of which showed evidence of a favorable, statistically significant program impact on at least one sexual behavior or reproductive health outcome.[34]

---

[32] Consolidated Appropriations Act, 2010, Pub. L. No. 111-117, 123 Stat. at 3253.

[33] *Id.* at 10.

[34] *See* Kappeler & Farb, *supra* note 24 at S3-S9; Julieta Lugo-Gil et al., *Updated Findings from the HHS Teen Pregnancy Prevention Evidence Review: August 2015 Through October 2016* (Apr. 2018), https://tppevidencereview.aspe.hhs.gov/pdfs/Summary_of_findings_2016-2017.pdf.

35.     In April 2010, HHS, through OAH, issued two separate FOAs soliciting applications for Tier 1 and Tier 2 five-year grants.  The Tier 1 grant projects were designed to replicate programs that had demonstrated positive impact on key sexual behavioral outcomes, including reduction of teen pregnancy and delay of sexual activity.  The Tier 2 grant projects were designed to develop and rigorously test new and innovative approaches to prevent teen pregnancy.

36.     The Tier 1 FOA, "Teenage Pregnancy Prevention: Replication of Evidence-based Programs Funding Opportunity," ("2010 Tier 1 FOA") announced $75 million in funds that "can only be provided to applicants who seek to replicate evidence-based programs that have been shown to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors."[35]   The 2010 Tier 1 FOA defined "[e]vidence-based program models" as "[p]rogram models for which systematic empirical research or evaluation has provided evidence of effectiveness" and directed applicants to the "list[] of evidence-based program[s] which the Department has identified []as having met the standards to be considered effective and eligible for funding for replication."[36]   The 2010 Tier 1 FOA, in turn, defined "[r]eplication" as "[r]eproduction of evidence-based program models that have been proven to be effective through rigorous evaluation."[37]

37.     To meet the application criteria, prospective grantees were required either to choose from the list of 28 programs compiled by Mathematica and set out in an appendix to the FOA, or to propose to replicate a program not already reviewed by Mathematica.  Any applicant choosing the latter option had to satisfy "a set of stringent criteria," including that the proposed

---

[35] HHS, *Teenage Pregnancy Prevention: Replication of Evidence-based* Programs (Tier 1), http://wayback.archive-it.org/3909/20140324182152/http://www.hhs.gov/ash/oah/grants/assets/funding_announcement_04012010.pdf at 3-4.

[36] *Id.* at 44.

[37] *Id.* at 45.

program was not previously reviewed by Mathematica and the "research on or evaluations of the program model [met] the screening and evidence criteria used by Mathematica."[38]  The 2010 Tier 1 FOA further instructed that in the event a proposed program "does not meet the evidence criteria, the application will be rejected and will not be considered."[39]

38.     Applicants for funding through the 2010 Tier 1 FOA also were "required to maintain fidelity to the original evidence-based program model with minimal adaptations."[40]  As the 2010 Tier 1 FOA explained, "[f]idelity" is "[t]he degree to which an intervention is delivered as designed" and the "[f]aithfulness with which a curriculum or program is implemented."[41]  Significant adaptations would result in an applicant being ineligible for Tier 1 funding and, instead, "would entail applicants applying under Tier 2."[42]

39.     The Tier 2 FOA, entitled "Teenage Pregnancy Prevention: Research and Demonstration Programs (Tier 2) and Personal Responsibility Education Program" ("2010 Tier 2 FOA") directed funding to "support research and demonstration programs that will develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy under the TPP program." [43]

40.     The 2010 Tier 1 FOA provides that "[f]inal award decisions will be made by the Director of the Office of Adolescent Health."[44]  The 2010 Tier 2 FOA provides that "[f]inal award decisions will be made collaboratively by the Director, OAH and the Commissioner,

---

[38] *Id.* at 6, 7.
[39] *Id.* at 7.
[40] *Id.*
[41] *Id.* at 44.
[42] *Id.* at 7.
[43] HHS, *Teenage Pregnancy Prevention: Research and Demonstration Programs (Tier 2) and Personal Responsibility Education Program,* http://wayback.archive-it.org/3909/20140324182153/http://www.hhs.gov/ash/oah/grants/assets/foa_tpp_tier_2.pdf at 5.
[44] 2010 Tier 1 FOA at 32.

ACYF," as the 2010 Tier 2 FOA was a collaborative FOA related to not only the Tier 2 TPP Program funding, but also funding related to PREP, which ACYF oversees.[45]

41.    OAH funded 102 grantees through competitively awarded grants as part of the April 2010 FOAs—75 Tier 1 grants and 27 Tier 2 grants.[46]  Between fiscal years 2010 and 2014, the grantees' projects reached more than half a million young people in 39 states and the District of Columbia, trained a combined 6,100 facilitators, and created 3,800 community partnerships.[47]

42.    As provided for by Congress, a fundamental objective of the TPP Program is to evaluate programs funded by Tier 1 and Tier 2 grants to continue to build the repository of evidence regarding which teen pregnancy prevention programs are effective, for which populations, and in which settings, and, equally important, which are not effective.[48]  HHS's evaluation of the first cohort of TPP Program grantees concluded that a number of programs demonstrated statistically significant positive results, warranting inclusion on the Evidence Review.  Overall, the number of evaluations with positive impacts exceeded the norm for large-scale evaluation efforts in other fields.[49]

43.    Apart from these TPP Program-specific evaluations, HHS maintained its contract with Mathematica to supplement the Evidence Review.  In July 2014, as the first wave of grants was nearing its conclusion, HHS issued an installment of the Evidence Review, updating and augmenting its list of programs showing evidence of effectiveness.[50]

_____

[45] 2010 Tier 2 FOA at 3, 31.
[46] Amy Feldman Farb & Amy L. Margolis, *The Teen Pregnancy Prevention Program (2010-2015): Synthesis of Impact Findings*, 106 Am. J. Pub. Health S9 (Sept. 2016), available at https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5049454/ (last accessed June 21, 2018).
[47] OAH, HHS, *Results from the OAH Teen Pregnancy Prevention Program*, https://www.hhs.gov/ash/oah/sites/default/files/tpp-cohort-1/tpp-results-factsheet.pdf.
[48] *Id.*; *see also* OAH, HHS, *TPP Program Grantees (FY2010-2014)*, https://www.hhs.gov/ash/oah/grant-programs/teen-pregnancy-prevention-program-tpp/about/tpp-cohort-1/index.html; Farb & Margolis, *supra* note 46, at S11.
[49] OAH, *supra* note 47; Farb & Margolis, *supra* note 46, at S13.
[50] Brian Goesling et al., *Updated Findings from the HHS Teen Pregnancy Prevention Evidence Review: January 2011 Through April 2013* (July 2014), https://tppevidencereview.aspe.hhs.

(footnote continued)

44.     During the 2010–2015 grant cycle, teen pregnancy rates declined and the TPP Program was widely credited (including by HHS itself) as contributing to this trend.

45.     In January 2015, HHS, through OAH, issued new FOAs for a second cohort of five-year grants organized into two tiers and further subdivided as follows:

- **Tier 1A** – Capacity Building to Support Replication of Evidence-Based Teen Pregnancy Prevention Programs: "The goal of this FOA is to fund intermediary organizations to provide capacity building assistance (CBA) to at least 3 youth-serving organizations to replicate evidence-based TPP programs in a defined service area with demonstrated need."[51]

- **Tier 1B** – Replicating Evidence-Based Teen Pregnancy Prevention Programs to Scale in Communities with the Greatest Need: "The goal of this FOA is to have a significant impact on reducing rates of teen pregnancy and existing disparities by replicating evidence-based TPP programs to scale in at least 3 settings in communities and with populations at greatest need."[52]

- **Tier 2A** – Supporting New or Innovative Approaches: "The overall goal of this FOA . . . is to enable and support early innovation to advance adolescent health and prevent teen pregnancy."[53]

---

gov/pdfs/Summary_of_findings_2013.pdf.

[51] OAH et al., *Capacity Building to Support Replication of Evidence-Based TPP Programs (Tier 1A) Funding Opportunity Announcement and Application Instructions* 3-4 (Jan. 10, 2015), https://www.hhs.gov/ash/oah/sites/default/files/tier1a-foafile.pdf ("2015 Tier 1A FOA").

[52] OAH et al., *Replicating Evidence-Based Teen Pregnancy Prevention Programs to Scale in Communities with the Greatest Need (Tier 1B) Funding Opportunity Announcement and Application Instructions* 3 (Jan. 10, 2015), https://www.hhs.gov/ash/oah/sites/default/files/tier1bfoafile.pdf ("2015 Tier 1B FOA").

[53] OAH et al., *Supporting and Enabling Early Innovation to Advance Adolescent Health and Prevent Teen Pregnancy (Tier 2A) Funding Opportunity Announcement and Application Instructions* 4 (Jan. 10, 2015), https://www.hhs.gov/ash/oah/sites/default/files/tier2a-foafile.pdf ("2015 Tier 2A FOA").

- **Tier 2B** – Rigorous Evaluation of New or Innovative Approaches: "The purpose of this FOA is to increase the number of evidence-based TPP interventions available by rigorously evaluating new or innovative approaches for preventing teen pregnancy and related high-risk behaviors."[54]

46.     Consistent with both the language of the relevant appropriation for the TPP Program grants and HHS's interpretation of that language in the 2010 Tier 1 and Tier 2 FOAs, the 2015 Tier 1A and 1B FOAs focused on replicating existing evidence-based programs that had been determined to be effective, while the 2015 Tier 2A and 2B FOAs focused on growing the list of proven evidence-based programs.

47.     Specifically, the 2015 Tier 1B FOA directed applicants to choose an "evidence-based TPP program[] eligible for replication," which was defined as "a program that had shown evidence of effectiveness as part of the TPP Evidence Review and had been "assessed by the HHS TPP Evidence Review as being implementation ready, meaning that the program has clearly defined curricula and components, necessary staff supports and training, and specified guidelines and tools for monitoring fidelity."[55]

48.     The 2015 Tier 1B FOA further "required [grantees] to implement evidence-based TPP programs with fidelity and quality"[56] and awarded points to grantees based on, among other things, the "extent to which the applicant's plans for monitoring fidelity and managing adaptations are likely to result in implementation of evidence-based TPP programs with fidelity" as well as the applicant's experience "implementing evidence-based TPP programs on a large

---

[54] OAH, *Rigorous Evaluation of New or Innovative Approaches to Prevent Teen Pregnancy (Tier 2B) Funding Opportunity Announcement and Application Instructions* 3 (Jan. 10, 2015), https://www.hhs.gov/ash/oah/sites/default/files/tier2b-foafile.pdf ("2015 Tier 2B FOA").
[55] 2015 Tier 1B FOA at 11-12.
[56] *Id.* at 21.

scale (i.e., at least 500 youth per year)" and in the target communities.[57] Applicants also were awarded points based on the extent to which their programs were culturally inclusive and non-stigmatizing for all teens.[58]

49. As with the 2010 FOAs, final award decisions for the 2015 FOAs were to be made by the OAH Director.[59]

50. In July 2015, following a highly competitive grant application process, HHS awarded 81 new five-year TPP Program grants.

51. The Evidence Review has been conducted and updated periodically since 2009, and the most recent results were published in April 2018, reflecting studies through October 2016.[60] As of April 2018, there were 48 evidence-based program models approved for use in Tier 1 funded programs.[61]

52. The TPP Program has been widely lauded as a model of evidence-based policy making. The unanimous September 2017 report of the bipartisan Commission on Evidence-Based Policymaking, established by House Speaker Paul Ryan and Senator Patty Murray, showcased the TPP Program as an example of a federal program "developing increasingly rigorous portfolios of evidence," where "[e]vidence building was woven into the program from the start, including a full range of studies from implementation assessments to impact evaluations, using random assignment when appropriate."[62]

---

[57] *Id.* at 73, 74.
[58] *Id.* at 53, 73.
[59] *Id.* at 77.
[60] Lugo-Gil et al., *supra* note 34.
[61] *Id.*
[62] Comm'n on Evidence-Based Policymaking, *The Promise of Evidence-Based Policymaking* 94 (Sept. 2017), https://www.cep.gov/content/dam/cep/report/cep-final-report.pdf.

53.    As of September 2016, the TPP Program was on track to serve an estimated 1.7 million youths across the United States.[63]

**The Trump-Pence Administration's Campaign to Dismantle the TPP Program**

54.    The Trump-Pence Administration took office in January of 2017, and set to work implementing an ideological agenda that has a demonstrated aversion to evidence and science. For example, in December 2017, senior officials at the CDC informed policy analysts that certain words were forbidden from budget documents, including "evidence-based," "science-based," and "diversity."[64]

55.    In May 2017, President Trump's proposed budget for FY 2018 called for eliminating the TPP Program[65] and sought instead a $277 million investment in extending abstinence-only education.[66]

56.    Significantly, on June 5, 2017, the Trump administration appointed Valerie Huber as Chief of Staff for the Office of the Assistant Secretary of Health ("OASH"), the office at HHS under which OAH falls.[67]  Ms. Huber has since become the Senior Policy Adviser at OASH.[68]

---

[63] Kappeler, *supra* note 1, at S5.

[64] Lena H. Sun & Juliet Eilperin, *CDC Gets List of Forbidden Words: Fetus, Transgender, Diversity*, WASH. POST (Dec. 15, 2017), https://www.washingtonpost.com/national/health-science/cdc-gets-list-of-forbidden-words-fetus-transgender-diversity/2017/12/15/f503837a-e1cf-11e7-89e8-edec16379010_story.html.

[65] U.S. Health and Human Servs., *General Departmental Management Budget*, https://www.hhs.gov/sites/default/files/combined-general-department-management.pdf   at   91 ("The teenage pregnancy rate has declined significantly over recent years, but it does not appear this program has been a major driver in that reduction.")

[66] OMB, *Budget   of   the   U.S.   Government,   Fiscal   Year   2018*, https://www.whitehouse.gov/sites/whitehouse/files/omb/budget/fy2018/budget.pdf , at Table S-6; Lisa Ryan, *Trump's Proposed Budget Would Invest $277 Million in Abstinence-Only Education*, THE CUT (May 24, 2017), https://www.thecut.com/2017/05/trump-budget-abstinence-only-sex-ed.html.

[67] HHS,   Office   of   the   Assistant   Sec'y   for   Health,   *Organizational   Chart*, https://www.hhs.gov/ash/about-ash/organizational-chart/index.html.

[68] *See* HHS,   Office   of   the   Assistant   Sec'y   for   Health,   *Valerie   Huber*, https://www.hhs.gov/ash/about-ash/leadership/valerie-huber/index.html.

57.     Prior to serving at HHS, Ms. Huber served as the abstinence education coordinator for her home state of Ohio's Department of Health from 2004 to 2007.  During her tenure, she was widely criticized for promoting "false and misleading information regarding sexual health and wellness" and misrepresenting "religious convictions as scientific fact."[69]  Ms. Huber has claimed that peer-reviewed scientific studies concerning the effectiveness of contraceptives in preventing teen pregnancy are biased.[70]

58.     After resigning from Ohio's Department of Health in January of 2007, she formed the National Abstinence Education Association—a lobbying arm of the abstinence education industry, later known as Ascend.  While at NAEA, Ms. Huber worked to rebrand abstinence-only education as "sexual risk avoidance" ("SRA") education, as an attempt to avoid the research showing the ineffectiveness of abstinence-only education.  Ms. Huber and other proponents of these programs now talk in terms of promoting abstinence as the "optimal health behavior" and returning already sexually active teens to an abstinence, or "cessation," state.[71]  These new euphemisms notwithstanding, the approach—to implement programs that teach that the only

---

[69] SCOTT H. FRANK, CASE W. RESERVE UNIV., REPORT ON ABSTINENCE-ONLY-UNTIL-MARRIAGE PROGRAMS IN OHIO (June 2005), available at http://www.aidstaskforce.org/wp-content/uploads/2010/12/Abstinence_Report_June051.pdf (last accessed June 21, 2018); *see also*; Sexuality Info. & Educ. Council of the U.S., *Abstinence-Only Leader Appointed to Key HHS Leadership Role* (Jun. 6, 2017), http://www.siecus.org/index.cfm?fuseaction=Feature.showFeature&FeatureID=2482. Additionally, Ms. Huber was disciplined for an ethics violation after she awarded a state contract to a company to which she had ties.  *See* Brandy Zadrozny, *Trump's Abstinence Queen Has a Tarnished Record*, The Daily Beast (June 28, 2017), https://www.thedailybeast.com/trumps-abstinence-queen-has-a-tarnished-record (citing official investigation documents from the Ohio Ethics Commission).

[70] Julie Rovner Kaiser, *Drop in Pregnancies Is Due to More Contraceptives, Not Less Sex*, PBS NEWSHOUR (Sept. 2, 2016), https://www.pbs.org/newshour/health/teen-pregnancies-contraceptives-less-sex.

[71] Jesseca Boyer, , *New Name, Same Harm: Rebranding of Federal Abstinence-Only Programs,* GUTTMACHER INST. (Feb. 28, 2018), https://www.guttmacher.org/gpr/2018/02/new-name-same-harm-rebranding-federal-abstinence-only-programs; Mark Peters, *Euphemism: Sexual Risk Avoidance*, BOSTON GLOBE (June 23, 2017), https://www.bostonglobe.com/ideas/2017/06/23/euphemism-sexual-risk-avoidance/cowYjFTOcIS7hmD0wtm64O/story.html.

acceptable action is to voluntarily refrain from all sexual activity outside of marriage—remains the same.

59.     As revealed by documents obtained from HHS through a Freedom of Information Act request, Ms. Huber, both directly and through intermediaries, repeatedly lobbied political appointees at HHS in early 2017 to "[e]liminate" the TPP Program and OAH, even though both are congressionally mandated.  For example, in February of 2017, Ms. Huber sent an email directed to Heidi Stirrup, Deputy White House Liaison for Political Personnel, Boards and Commissions at HHS.  Within the body of the email, Ms. Huber described the need to curtail the "expand[ed] reach of OAH" by HHS and asserted that the "[TPP] Program need[s] to be immediately eliminated."   The attachments to the email include recommendations from her organization, Ascend, with a chart that details steps such as "eliminat[ing] the Office of Adolescent Health (OAH) at HHS," "eliminate[ing] the OAH 'Teen Pregnancy Evidence-based List'," and "defund[ing] the *Teen Pregnancy Prevention (TPP) Program* and restore this funding to SRA programs," as well as immediately using a new "lens" for "all Funding Announcements (FOA) and grant awards . . . to offer the best opportunity for successful outcomes," especially for "those of faith and/or those who hold conservative values."

60.     The following month, Ms. Huber penned an op-ed promoting abstinence-only education and complaining of the lack of funding for it.[72]  In the same op-ed, Ms. Huber maligned the TPP Program, referring to it as "so-called comprehensive sex education" and claiming that it "normalizes teen sex."  She also attacked the effectiveness of the TPP Program, stating inaccurately that "more than 80 percent of teens in the [TPP] program fared either worse or no better than their peers who were not a part of the program."

---

[72] Valerie Huber, *Sexual Risk Avoidance Education: Common sense, science and health are winning the day*, THEHILL.COM (Mar. 12, 2017), http://thehill.com/blogs/pundits-blog/healthcare/323590-sexual-risk-avoidance-education-common-sense-science-and-health.

61.     In July 2017, less than a month after her appointment to her position as Chief of Staff for the office that administers the TPP Program, HHS terminated all TPP Program grants, notifying participants that their grants would be terminated in June 2018, two years before completion of the five-year project period. In February 2018, nine of the grantees filed suit in four district courts to challenge the premature and illegal termination of their TPP Program grants. Every court to consider the issue granted relief in favor of the grantees, and subsequently ordered HHS to process those grantees' applications for continued TPP Program funding.[73]

62.     On March 23, 2018, with the Consolidated Appropriations Act, 2018, Congress fully funded the TPP Program for fiscal year 2018, directing that "$101,000,000 shall be for making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy and for the Federal costs associated with administering and evaluating such contracts and grants."[74]   The Consolidated Appropriations Act, 2018, mandates that "not more than 10 percent of the available funds shall be for training and technical assistance, evaluation, outreach, and additional program support activities, and of the remaining amount 75 percent shall be for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors, and 25 percent shall be available for research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy."[75]   Congress also mandated

---

[73] *Planned Parenthood of Greater Wash. & N. Idaho v. HHS*, 2018 WL 1934070, at *1-2 (E.D. Wash. Apr. 24, 2018); *King Cnty. v. Azar*, 2018 WL 2411759, at *6 (W.D. Wash. May 29, 2018); *Policy & Research, LLC v. HHS*, 2018 WL 2184449, at *2-5 (D.D.C. May 11, 2018); *Healthy Teen Network v. Azar*, 2018 WL 1942171, at *1-4 (D. Md. Apr. 25, 2018).
[74] Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, 132 Stat. 348, 733 (2018).
[75] *Id.*

that "$6,800,000 shall be available to carry out evaluations (including longitudinal evaluations) of teenage pregnancy approaches."[76]

63.    Consistent with its practice since 2009, Congress provided separate appropriations to support abstinence-only education.  Congress appropriated $25 million to the SRAE Program "for making competitive grants which exclusively implement education in sexual risk avoidance (defined as voluntarily refraining from non-marital sexual activity)."[77]    Separately, it has continued the Title V program, appropriating $75 million to it in 2018.[78]

64.    In the Consolidated Appropriations Act, 2018, Congress directed that no more than one percent of any discretionary funds appropriated to HHS be "transferred" between appropriations and that no appropriation be increased by more than three percent.[79]

### The New Funding Opportunity Announcements are Yet Another Attempt to Dismantle the TPP Program

65.    Despite the pending lawsuits challenging the Administration's early termination of the 2015 TPP Program grants and the day after the first court enjoined Defendants' terminations, Defendants continued in their plan to dismantle the TPP Program, issuing two new FOAs.  Through those FOAs, Defendants seek to repurpose the TPP Program to fund abstinence-only content, rather than—per Congress's plain mandate—evidence-based programs, including programs shown to be effective through rigorous research.

66.    The 2018 Tier 1 FOA announced up to $61 million for approximately 270 grants for 2 years ranging from $200,000 to $500,000 annually to serve high school students 15–19 years of age.[80]    The 2018 Tier 2 FOA, "Phase I New and Innovative Strategies (Tier 2) to

---

[76] *Id.*
[77] *Id.* at 736.
[78]   Bipartisan Budget Act of 2018, Pub. L. No. 115-123, 132 Stat. 64, 227 (Feb. 9, 2018), https://www.congress.gov/115/bills/hr1892/BILLS-115hr1892enr.pdf.
[79] Consolidated Appropriations Act, 2018, 132 Stat. at 736.
[80] 2018 Tier 1 FOA, *supra* note 6.

Prevent Teenage Pregnancy and Promote Healthy Adolescence," announced up to $22 million for approximately 75 awards ranging from $250,000 to $375,000 annually.[81]

67.     The 2018 FOAs dramatically and impermissibly alter the criteria for participation in the TPP Program in numerous ways that conflict with the Consolidated Appropriations Act, 2018, congressional intent, and HHS's practices.

68.     In a stark and unlawful departure from the plain language of the appropriation statute, the 2018 Tier 1 FOA does not require applicants to replicate programs that have been proven effective through rigorous evaluation.  It deletes the definition of "Evidence-Based Teen Pregnancy Prevention Programs."  It eliminates all references to HHS's Evidence Review and the list of evidence-based programs culled from nearly a decade of analysis and evaluation— even though HHS released a new installment of the TPP Evidence Review the very same week as Defendants issued the new FOAs, identifying 48 programs that had been "proven effective through rigorous evaluation."[82]   Indeed, the phrase "evidence-based" appears nowhere in that FOA, and the words "proven" and "rigorous evaluation" only appear when describing evaluations that will occur *after* funding. [83]

69.     Instead, the 2018 Tier 1 FOA declares that it will "fund the evaluation of replication strategies that focus on protective factors shown to prevent teen pregnancy, improve adolescent health, and address youth sexual risk holistically."[84]   To accomplish this goal, the 2018 Tier 1 FOA instructs prospective grantees to "replicate a risk avoidance model or a risk reduction model that incorporates the common characteristics"[85] of one of two "tools"—either the "Center for Relationship Education's Systematic Method for Assessing Risk-Avoidance Tool

---

[81] 2018 Tier 2 FOA, *supra* note 7.
[82] Lugo-Gil et al., *supra* note 34.
[83] *See* 2018 Tier 1 FOA at 19.
[84]  2018 Tier 1 FOA at 17.
[85] *Id.* at 4.

(SMARTool)" or the "Tool to Assess the Characteristics of Effective Sex and STD/HIV Education Programs."[86]

70.     According to the FOAs, "sexual risk avoidance" is "the natural approach for an emphasis on sexual delay," and "sexual risk reduction" is "the natural approach for an emphasis on cessation support."[87]   The FOA defines "sexual risk" as "engaging in any behavior that increases one's risk for any of the unintended consequences of sexual activity, including, but not limited to pregnancy."[88]

71.     Contrary to both the statute and the previous Tier 1 FOAs, neither of the tools is a "program[] that ha[s] been proven effective through rigorous evaluation."   As both their names and content make clear, both are checklists of factors—that is, "tools"—to assist in the selection of a "program."   Neither is itself a program, and replicating their "elements" is not the same as replicating a proven program.

72.     The SMARTool, by its own terms, is a "tool [that] can be used to assess a variety of sexual risk-avoidance curricula and programs," which is designed not as a replicable program but as a tool to "help organizations assess, select, and implement effective programs and curricula that support sexual risk avoidance."[89]   It is intended to be "a resource to curriculum developers and educators and offers methods for comparing different curricula to one another."[90] It has not been evaluated as a program, nor does it incorporate any of the findings of the TPP Evidence Review or the TPP Program.[91]

---

[86] *Id.* at 12.

[87] *Id.* at 15.

[88] *Id.* at 86.

[89] Ctr. for Relationship Educ., *SMARTool: Assessing Potential Effectiveness for Sexual Risk Avoidance Curricula and Programs* 6 (2010), https://www.myrelationshipcenter.org/ getmedia/dbed93af-9424-4009-8f1f-8495b4aba8b4/SMARTool-Curricula.pdf.aspx.

[90] *Id.*

[91] 2018 Tier 1 FOA at 12.

73.     The Tool to Assess the Characteristics of Effective Sex and STD/HIV Education Programs ("TAC") similarly describes itself as an "organized set of questions designed to help practitioners assess whether curriculum-based programs incorporated the common characteristics of effective programs."[92]   By contrast, the TAC's glossary defines a "program" as "a set of activities packaged in a purposeful way with the goal of preventing a problem, treating a problem, and/or supporting an individual or a group." [93]   Like the SMARTool, the TAC does not incorporate any findings from the TPP Evidence Review or the TPP Program—nor could it, given that it was created two years *before* the creation of the TPP Program.

74.     Instead of requiring that programs be selected from the list of evidence-based programs already "proven effective" with youth, both the 2018 Tier 1 FOA and the guidance issued by OAH concerning the FOA make clear that prospective grantees "have the freedom to choose *any curriculum*"[94] without regard to whether it has been proven effective, proven ineffective, or ever rigorously evaluated at all, and without regard to whether the grantee has experience administering it or any other sexual education program.

75.     The 2018 Tier 1 FOA also does not require "replication" of the selected curriculum.  Applicants are told in the 2018 Tier 1 FOA that they must either make "necessary adaptations" or that "supplementary materials [should be] presented in tandem with an established curriculum,"[95] in order that the elements in the SMARTool or TAC be addressed.

---

[92] ETR & HTN, *Tool to Assess the Characteristics of Effective Sex and STD/HIV Education Programs* 1-2 (2007), available at http://www.health.state.mn.us/divs/idepc/dtopics/stds/stded.pdf (last accessed June 21, 2018).
[93] *Id.* at 49.
[94] HHS, *Fact Sheet: FY 2018 Funding Opportunity Announcements for Teen Pregnancy Prevention Program* (Apr. 20, 2018) (emphasis added), https://www.hhs.gov/ash/about-ash/news/2018/fy-2018-funding-opportunity-announcements-tpp-factsheet.html;   OAH, HHS, *FAQs for Current FOAs*, https://www.hhs.gov/ash/oah/grant-programs/funding-opportunities/faqs-for-current-foas/index.html; 2018 Tier 1 FOA at 12-13.
[95] 2018 Tier 1 FOA at 12 (emphasis added).

76.     Rather than fund "replicati[on] [of] programs that *have been* proven effective through rigorous evaluation," as Congress directed, the 2018 Tier 1 FOA's stated purpose is "to fund *the evaluation of* replication strategies that focus on protective factors shown to prevent teen pregnancy, improve adolescent health, and address youth sexual risk holistically.[96]  Indeed, the substance of the 2018 Tier 1 FOA is nearly indistinguishable from the 2018 Tier 2 FOA; the latter, like the former, instructs applicants to choose any curriculum so long as it "implement[s] protective factors and/or either elements" from the SMARTool or the TAC and then to subject that curriculum to testing and evaluation.[97]  Defendants thus have erased the distinction between the two statutorily separate grant tiers, contrary to Congress's directive.

77.     The 2018 Tier 1 FOA also incorporated several changes to the scoring metric for grant applicants. The 2015 Tier 1B FOA allocated up to 30 points for an application's Program Approach, with particular value placed on the project's implementation of evidence-based programming.[98]

78.     By contrast, the 2018 Tier 1 FOA devalues such consideration of an application's proposed project and deletes the evidence-based language from the criteria.[99]  Most significantly, the 2018 Tier 1 FOA adds a new application criterion, worth more points than any other criteria. This "Realistic, Practical, and Meaningful Application of Project Expectations and Priorities" criterion rewards programs with a full quarter of the available points (25 out of 100 points) for incorporating abstinence-only messages communicating that sexuality is not a normal and healthy aspect of human development into their programming, even if an applicant proposes to carry out a risk-reduction model (as opposed to an abstinence-only model).  To obtain these 25 points, applicants must "[c]learly communicate[] that teen sex is a risk" with negative physical,

---

[96] *Id.* at 17, 18 (emphasis added).
[97] *See, e.g.*, 2018 Tier 2 FOA at 11, 13.
[98] 2015 Tier 1B FOA at 72-73.
[99] *Compare* 2015 Tier 1B FOA at 72-73 *with* 2018 Tier 1 FOA at 60.

sociological, and economic consequences; integrate "optimal health into every component" of their projects; and provide "cessation support" for those who are already sexually active "to make healthier and risk-free choices in the future"[100]  These are all terms and concepts used by Ms. Huber and other opponents of comprehensive sexual education to refer to abstinence-only programs.

79.     Notwithstanding that the 2018 Tier 1 FOA purports to allow grant projects embracing either a sexual risk avoidance or sexual risk reduction model, to earn points under this criterion, applicants must "[p]lace[] a priority" on promoting sexual risk avoidance—or abstinence-only—skills and information, without regard to whether these messages have ever been proven effective in the particular setting.[101]  Placing priority emphasis on abstinence-only is incompatible with the sexual risk reduction models included on the Evidence Review.  Thus, an applicant proposing to replicate a sexual risk reduction model on the Evidence Review with fidelity will necessarily be denied the 25 points.  The 2018 Tier 1 FOA, therefore, is weighted in favor of abstinence-only proposals and against sexual risk reduction applications.

80.     An applicant that wishes to implement a program on the Evidence Review and still be eligible for the 25 points would, as the FOA requires, need to make "necessary adaptions."[102]  However, as the 2015 Tier 1B FOA recognized, a program can no longer be regarded as having been "proven effective" when untested significant adaptions are made to it, and thus, the applicant would not "replicate" the program, as Congress intended, but, instead, would be proposing a new or revised model—a Tier 2 project.[103]

---

[100] 2018 Tier 1 FOA at 59, 60 (emphases omitted).

[101] *Id.* at 60.

[102] *Id.* at 12.

[103] Some licensors of evidence-based program, moreover, require approval to being implementing any adaptions. *See* Teen Outreach Program (TOP): *Implementation Requirements and Guidance—Allowable                                                                  Adaptations*, https://tppevidencereview.aspe.hhs.gov/document.aspx?rid=3&sid=237&mid=3.

81.     Similarly, the 2018 Tier 2 FOA requires the recipient to "describe in detail how they implement protective factors and/or either elements from the SMARTool or [TAC]."[104] Additionally, the 2018 Tier 2 FOA provides a similar scoring metric as the 2018 Tier 1 FOA[105], which prioritizes the alignment with the "priorities and expectations" of the FOA over scientific qualifications and considerations.[106]

82.     Both the 2018 Tier 1 FOA and the 2018 Tier 2 FOA also require that the "topics and themes are appropriate for the age group and other specific characteristics of the proposed audience."[107]  However, the "[r]ecipients are expected to conduct their own review of all materials to ensure that they are medically accurate, age appropriate, culturally and linguistically appropriate, and trauma-informed."[108]  The 2018 FOAs provide no guidance with regards to what is "age appropriate," except to say that the "ability to cognitively understand a concept is not evidence that the concept is age appropriate."[109]  The FOAs thus allow the grantee to determine what is or is not "age appropriate" for young people, although the scientific evidence may prove otherwise.  This is markedly different from the 2010 and 2015 FOAs, which relied upon the scientifically determined cognitive and social development of young people at various ages.

83.     The 2018 Tier 1 FOA similarly made a drastic change to the definition of "Medical Accuracy."  Information is no longer required to be "[v]erified or supported by the weight of research conducted in compliance with accepted scientific methods" in order to be considered medically accurate.[110]  The 2018 Tier 2 FOA does away with a definition of the term entirely.[111]

---

[104] 2018 Tier 2 FOA at 11.
[105] *Id.* at 53, 54.
[106] *See, e.g., id.* at 67, 68.
[107] 2018 Tier 1 FOA at 2, 24; 2018 Tier 2 FOA at 20, 21.
[108] 2018 Tier 1 FOA at 2, 24; 2018 Tier 2 FOA at 20, 21.
[109] 2018 Tier 1 FOA at 2, 24; 2018 Tier 2 FOA at 20, 21.
[110] *Compare* 2015 Tier 1B FOA at 90 *with* 2018 Tier 1 FOA at 86.
[111] 2018 Tier 2 FOA at 77-78.

OAH will no longer review for medical accuracy, but will accept the applicant's certification that it has done such review.

84.     HHS has never provided a reasonable explanation for the radical changes in the 2018 FOAs.  The 2018 Tier 1 FOA itself contains no explanation of this research, why HHS adopted the "new approach" of abandoning evidence-based, rigorously evaluated programs in favor of requiring unproven, abstinence-only content, or how this approach squares with either the portfolio of effective programs amassed by the agency under the TPP Program. In fact, one of the few scientific sources quoted in both the 2018 Tier 1 FOA and the 2018 Tier 2 FOA, Our Future: A Lancet Commission on Adolescent Health and Wellbeing, directly contradicts the 2018 FOAs' new focus, concluding that there is "[h]igh-quality evidence that abstinence-only education is ineffective in preventing HIV, incidence of sexually transmitted infections and adolescent pregnancy" and that such education is "not recommended."[112]  The Lancet report instead recommends comprehensive sexual education to "[e]nsure that all adolescents and young adults' rights to essential health information are met."[113]

85.     Contrary to the previous two FOAs, final award decisions will be made by the Director of the Office of Adolescent Health, "in consultation with the Assistant Secretary for Health,"[114] a political appointee whom HHS has inserted into the TPP Program grantmaking process.  Award decisions, once issued, "are final and [applicants] may not appeal."[115]

86.     The 2018 FOAs thus abandon the TPP Program's statutory mandate in favor of supporting abstinence-only content, long championed by the agency's political leadership, without regard to the results of rigorous evaluation, and in violation of Congress's mandates.  As

---

[112] George C. Patton et al., *Our Future: A* Lancet *Commission on Adolescent Health and Wellbeing* tbl.4 (June 11, 2016), https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5832967/; 2018 Tier 1 FOA at 8.

[113] Patton, *supra* note115, tbl.4.

[114] 2018 Tier 1 FOA at 63.

[115] *Id.* (emphasis omitted).

explained above, Congress has created multiple funding streams for abstinence-only education that are separate and distinct from the OAH-administered funding dedicated to evidence-based teen pregnancy prevention programs. The 2018 FOAs attempt to impermissibly transfer or augment funds between these distinct appropriations so as to unlawfully increase the amount of federal funding for abstinence-only programs beyond what was provided for by Congress.

**The New FOAs' Impact on Plaintiff PPNYC and the Communities It Serves**

87.     In 2010, OAH awarded Plaintiff PPNYC a five-year Tier 1B TPP Program grant of $611,823 annually. This grant allowed PPNYC to provide the Making Proud Choices! curriculum in schools, after-school programs, and community-based organizations in Manhattan, Bronx, and Brooklyn. In 2013, OAH granted PPNYC one-year supplemental funding of $262,541 to expand its programming into Queens. Making Proud Choices! appears on the TPP Evidence Review. Overall, PPNYC reached 6,200 young people over the five years of its 2010 TPP Program grant and the one year of its 2013 TPP supplemental grant, targeting those living in 37 low-income and high pregnancy rate zip codes.

88.     This year, in response to the FOA, PPNYC considered applying for Tier 1 and Tier 2 TPP Program funding for two projects. PPNYC's Tier 1 funding project would have entailed providing the Power Through Choices programming to fifteen to nineteen year olds in foster care and juvenile justice centers. Power Through Choices appears on the TPP Evidence Review. PPNYC's Tier 2 project was to rigorously test an existing parent training model, aimed at working with parents of adolescents through community-based organizations.

89.     But the 2018 FOAs, and the unlawful changes that HHS has made to the terms for receiving TPP Program funding, put PPNYC at such a disadvantage for 2018 TPP Program funding that it cannot compete.

90.     The 2018 FOA disadvantages PPNYC and others committed to evidence-based sexual risk reduction education because the 2018 FOAs' largest amount of points are reserved for applicants proposing sexual risk avoidance, or abstinence-only programming, even if that

programming is not evidence-based.  The 2018 Tier 1 FOA's alteration of point system for evaluating applications prevents PPNYC from viably competing for the awards. PPNYC's evidence-based, sexual risk reduction programming contradicts the abstinence-only messaging favored by the FOA such that PPNYC cannot incorporate it and maintain the program's fidelity, and therefore, PPNYC is automatically ineligible for one-quarter of available points (25 our 100). PPNYC will therefore be at a severe disadvantage compared to all applications that incorporate abstinence-only messages.

91.    The 2018 Tier 1 FOA also reduces the number of points allocated according to an applicant's demonstration of the need of its target population or community from 20 to 15.  This depresses PPNYC's ability to compete by carefully identifying those young people most in need in its service areas and designing proposals tailored to those target populations.

92.    PPNYC is committed to implementing evidence-based and age-appropriate sexual and reproductive health programming that is consistent with its mission to provide complete and stigma-free education to young people in its communities.  Although PPNYC provides abstinence education, its commitment to evidence-based and age-appropriate programming prevents it from promoting abstinence-*only* education, which fails to educate young people on risk-reduction strategies beyond abstinence or cessation that help them stay healthy, such as contraception and condom use; ignores the reality that engaging in sexual activity is not always a choice for young people and that most people do not wait for marriage to have sex; and shames young people who do choose to engage in sexual behaviors.  PPNYC's programming cannot be made to be abstinence-only, as that would be a disservice to the communities that it serves and contrary to its mission.

93.    There are numerous abstinence-only organizations in PPNYC's service area that would not have qualified under the prior FOAs requiring evidence-based programming, but that now can apply under the 2018 FOAs and potentially will receive TPP Program funding to implement the non-evidence based programming that they have developed.

94.     PPNYC determined that it would not be able to compete fairly under the 2018 FOAs, and therefore is not submitting applications for either its Tier 1 or Tier 2 projects.  PPNYC does not anticipate any other grant funding that would allow it to implement the Power Through Choices programming in foster care and juvenile justice centers throughout its service areas, and therefore will be prevented from serving these at-risk populations, while cultivating beneficial relationships with other organizations in the community.  Similarly, PPNYC will be unable to test its parent-training model as it planned to do had it received Tier 2 funding.  Because it is very expensive to rigorously test a new model, federal funding is the only feasible source of funding. The unlawful changes to the 2018 FOAs' terms therefore effectively prevent PPNYC from developing this new model.

### FIRST CLAIM FOR RELIEF
#### Administrative Procedure Act—Contrary to Law

95.     PPNYC incorporates Paragraphs 1 through 94 above.

96.     The Administrative Procedure Act, 5 U.S.C. § 706, authorizes federal courts to set aside agency action that is contrary to law.

97.     The 2018 Tier 1 FOA is contrary to the Continuing Appropriations Act, 2018, for at least three reasons.

98.     First, the 2018 Tier 1 FOA does not require "replicat[ion of] programs that have been proven effective through rigorous evaluation," as mandated by statute.  Instead, it permits applicants to obtain funds for programs that have never undergone—and may even have failed— rigorous evaluation.

99.     Second, the 2018 Tier 1 FOA unlawfully transfers funds from the appropriation "for replicating programs that have been proven effective through rigorous evaluation to reduce teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors" to the separate and distinct appropriations for (a) "research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy"; and/or (b) the Sexual Risk Avoidance Education Program.  It thereby

violates the statutory prohibition on transferring more than 1% from an appropriation or increasing appropriations by more than 3%.

100.    Third, the 2018 Tier 1 FOA undermines the entire statutory purpose of the TPP Program to support rigorously evaluated, evidence-based teen pregnancy prevention initiatives, by disadvantaging applicants committed to offering evidence-based programming and privileging those offering un-vetted and unscientific curricula.

101.    The 2018 Tier 2 FOA is contrary to the Continuing Appropriations Act, 2018 because the 2018 Tier 2 FOA unlawfully transfers funds from the appropriation for "making competitive contracts and grants to public and private entities to fund medically accurate and age appropriate programs that reduce teen pregnancy" to the appropriations "for making competitive grants which exclusively implement education in sexual risk avoidance (defined as voluntarily refraining from non-marital sexual activity)." It thereby violates the statutory prohibition on transferring more than 1% from an appropriation or increasing appropriations by more than 3%.

102.    The 2018 Tier 2 FOA countermands the entire statutory purpose of the TPP Program to support evidence-based teen pregnancy prevention initiatives, by disadvantaging applicants committed to offering evidence-based programming and privileging those offering un-vetted and unscientific curricula.

103.    As a result, PPNYC faces increased competition for grant funding, is unlawfully disadvantaged in that competition, and faces an imminent risk of irreparable injury to its programs and residents.

**SECOND CLAIM FOR RELIEF**
**Administrative Procedure Act—Arbitrary and Capricious**

104.    PPNYC incorporates Paragraphs 1 through 103 above.

105.    The Administrative Procedure Act, 5 U.S.C. § 706, authorizes this court to set aside agency action that is arbitrary and capricious, including when an agency adopts a course of action that is contrary to its own regulations and/or past practice.

106.     Both the 2018 Tier 1 FOA and the 2018 Tier 2 FOA are arbitrary and capricious and Defendants have abused their discretion in at least four ways.

107.     First, Defendants did not provide a reasoned explanation for the changes to the criteria in the 2018 FOAs or the FOAs' departure from the statute and past agency practice.

108.     Second, the criteria in the 2018 FOAs run counter to the evidence before the agency.

109.     Third, Defendants prejudged the 2018 TPP Program competition by weighing the scoring criteria in favor of abstinence-only and against evidence-based risk reduction program.

110.     Fourth, Defendants issued the 2018 FOAs as a pretext for ending the TPP Program.

111.     As a result, PPNYC faces increased competition for grant funding, is unlawfully disadvantaged in that competition, and faces an imminent risk of irreparable injury to its programs and residents.

## THIRD CLAIM FOR RELIEF
### *Ultra Vires* Action

112.     PPNYC incorporates Paragraphs 1 through 111 above.

113.     HHS, through its officials, may exercise only the authority conferred by statute.

114.     HHS lacks statutory authority to make Tier 1 funding for the TPP Program available to grantees who are not "replicating programs that have been proven effective through rigorous evaluation." Yet that is what the 2018 Tier 1 FOA does, in permitting funding for any project, whether or not it has been empirically studied or shown to be effective.

115.     Defendants' actions are patently outside of their statutory authority because the 2018 Tier 1 FOA is flatly incompatible with Congress's mandate for the TPP Program and contradicts the text, structure, and fundamental purpose of the TPP Program that 75% of the appropriated funds go to replicating rigorously evaluated programs. By creating a new spending program that has not been authorized by Congress and contains criteria irreconcilable with

Congress's criteria, Defendants have violated the separation of powers and encroached upon Congress's Spending authority, and thereby acted *ultra vires*.

116.    Additionally, Defendants' actions are patently outside of their statutory authority because Defendants have impermissibly transferred more than 1% of the appropriation for "fund[ing] medically accurate and age appropriate programs that reduce teen pregnancy" to exclusively abstinence-only education.

117.    Congress provided a $25 million separate appropriation for "making competitive grants which exclusively implement education in sexual risk avoidance."  Congress clearly articulated the intention to appropriate that set of money exclusively to abstinence-only education; such language was not used in the relevant appropriation relating to the Tier 1 and Tier 2 grants.  Thus, Congress did not intend for the money appropriated for the Tier 1 and Tier 2 grants to be allocated to exclusively abstinence-only education.

118.    By impermissibly transferring appropriations allocated to Tier 1 and Tier 2 funding to exclusively abstinence-only education, Defendants have violated the separation of powers and encroached upon Congress's Spending authority, and thereby acted *ultra vires*.

119.    As a result, PPNYC faces increased competition for grant funding, is unlawfully disadvantaged in that competition, and faces an imminent risk of irreparable injury to its programs and residents.

## FOURTH CLAIM FOR RELIEF
### 31 U.S.C.A. § 1301(a)

120.    PPNYC incorporates Paragraphs 1 through 119 above.

121.    31 U.S.C.A. § 1301(a) provides that "[a]ppropriations shall be applied only to the objects for which the appropriations were made except as otherwise provided by law."

122.    Through the 2018 FOAs, HHS, through its officials, seeks to use one appropriation to pay costs associated with the purposes of another appropriation.

123.    The 2018 Tier 1 FOA unlawfully augments funds from the appropriation "for replicating programs that have been proven effective through rigorous evaluation to reduce

teenage pregnancy, behavioral risk factors underlying teenage pregnancy, or other associated risk factors" to pay costs associated with the purposes of the separate and distinct appropriations for (a) "research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy"; and/or (b) the Sexual Risk Avoidance Education Program.  It thereby violates the statutory prohibition on augmentation of appropriations.

124.    The 2018 Tier 2 FOA unlawfully augments funds from the appropriation for "research and demonstration grants to develop, replicate, refine, and test additional models and innovative strategies for preventing teenage pregnancy" to pay costs associated with the purposes of the separate and distinct appropriations for the Sexual Risk Avoidance Education Program.  It thereby violates the statutory prohibition on augmentation of appropriations.

125.    As a result, PPNYC faces increased competition for grant funding, is unlawfully disadvantaged in that competition, and faces an imminent risk of irreparable injury to its programs and residents.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

126.    Declare the 2018 Tier 1 and Tier 2 FOAs were arbitrary, capricious, not in accordance with the law, ultra vires, and invalid.

127.    Enjoin HHS from using the 2018 Tier 1 FOA and the 2018 Tier 2 FOA to review applications for TPP Program grant funding.

128.    Enjoin HHS from awarding or disbursing any funds pursuant to the 2018 Tier 1 FOA and the 2018 Tier 2 FOA.

129.    Award Plaintiff's costs, attorneys' fees, and other disbursements for this action.

130.    Such other and further relief as this Court may deem just and proper.

Dated: New York, New York            Respectfully submitted,
       June 22, 2018

                                     By:    /s/ Marcus A. Asner
                                            Marcus A. Asner
                                            Alice C.C. Huling
                                            ARNOLD & PORTER KAYE SCHOLER LLP
                                            250 West 55th Street
                                            New York, New York 10019
                                            (212) 836-8000
                                            marcus.asner@arnoldporter.com
                                            alice.huling@arnoldporter.com

                                            Drew A. Harker
                                            Anne W. Pearlman
                                            ARNOLD & PORTER KAYE SCHOLER LLP
                                            601 Massachusetts Avenue, NW
                                            Washington, DC 20001
                                            (202) 942-5000
                                            drew.harker@arnoldporter.com
                                            anne.pearlman@arnoldporter.com

                                            Carrie Y. Flaxman (*pro hac vice*
                                            forthcoming)
                                            Richard Muniz (*pro hac vice* forthcoming)
                                            PLANNED PARENTHOOD
                                            FEDERATION OF AMERICA
                                            1110 Vermont Ave, NW, Suite 300
                                            Washington, DC 20005
                                            (202) 973-4800
                                            carrie.flaxman@ppfa.org
                                            richard.muniz@ppfa.org

                                            *Attorneys for Plaintiff Planned Parenthood*
                                            *of New York City, Inc.*